```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

DARNELL GREEN,

                Petitioner,      **No. 1:12-CV-0665(MAT)**

  -vs-                                **DECISION AND ORDER**

MICHAEL SHEEHAN,

                Respondent.

**I.   Introduction**

Pro se petitioner Darnell Green ("Green" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. 2254 on the basis that he is being held in Respondent's custody in violation of his federal constitutional rights. Green is incarcerated pursuant to a judgment entered against him on February 7, 2007, in New York State Supreme Court (Erie County) following a jury verdict convicting him on one count of Manslaughter in the First Degree (N.Y. Penal Law § 125.20).

**II.  Factual Background Procedural History**

On April 12, 2006, in the City of Buffalo, four individuals saw Petitioner charge at his father, Gary Green, and strike him with his hand. Two of the eyewitnesses were Petitioner's brothers. Although none of the eyewitnesses observed a knife in Petitioner's hands, they immediately saw Gary Green fall to the ground and start bleeding. Petitioner admitted to police that a knife found at the scene with Gary Green's blood on the blade belonged to him. The

major DNA profile on the knife handle matched Petitioner's DNA profile.

When Petitioner's brother, Carl Green, asked why he had stabbed their father, Petitioner replied, "He got what the fuck he deserved. Get the fuck out of my face before I stab you." T.806. Petitioner initially told the police that although he had been present at the scene, he did not stab anybody, surmising instead that his father must have cut himself on some glass. T.622-27. When the police told him that he was being charged with murdering his father, Petitioner stated, "I didn't mean to hurt anybody." T.730.

Petitioner was charged with murder in the second degree (N.Y. Penal Law § 125.25(1)). After a jury trial, he was acquitted of murder but found guilty of the lesser included offense of manslaughter in the first degree. He was sentenced to a determinate term of 20 years in prison to be followed by 5 years of post-release supervision.

Petitioner's conviction was affirmed on direct appeal in 2009. He did not file the instant habeas petition until 2012. Respondent answered the petition, asserting that it is untimely and that Petitioner is not entitled to equitable tolling of the statute of limitations. Respondent argues, in the alternative, that all of Petitioner's claims lack merit. Petitioner asserts that his mental health issues and low intelligence quotient ("I.Q.") entitle him to equitable tolling.

For the reasons that follow, the Court finds that the petition is untimely and that Petitioner is not entitled to equitable tolling. Accordingly, the request for a writ of habeas corpus is denied, and the petition is dismissed.

**III. Timeliness of the Petition**

   **A. Timeliness Calculation and Statutory Tolling**

Title I of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, § 101, 110 Stat. 1214, 1217 (codified at 28 U.S.C. § 2244), imposes a one-year time limit for filing habeas petitions. See 28 U.S.C. § 2244(d)(1)(A)-(D). The statute of limitations runs from the latest of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). For most petitioners, including Green, Section 2244(d)(1)(A) sets the applicable starting point for

the one-year period-i.e., the date on which the conviction became final. See Burton v. Stewart, 549 U.S. 147, 156-57 (2007).

A conviction is considered "final" "once 'the judgment of conviction [has been] rendered, the availability of appeal exhausted, and the time for petition for certiorari . . . elapsed.'" McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) (quoting Teague v. Lane, 489 U.S. 288, 295 (1989) (citation and internal quotation marks omitted in original) and citing Clay v. United States, 537 U.S. 522, 527 (2003) (noting that "finality" has a "long-recognized, clear meaning" in the post-conviction relief context-namely, the time when the United States Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires")).

On March 20, 2009, the Appellate Division, Fourth Department, of New York State Supreme Court, affirmed the conviction. People v. Green, 60 A.D.3d 1320 (4th Dep't 2009). On June 30, 2009, the New York Court of Appeals denied leave to appeal. People v. Green, 12 N.Y.3d 915 (2009). Green thereafter had 90 days, or until September 28, 2009, in which to file a petition seeking a writ of certiorari in the United States Supreme Court. McKinney, 326 F.3d at 96 (citing Sup. Ct. R. 13(1) ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last

resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). Because Green did not file a petition for certiorari seeking review of the New York state-court decisions in the United States Supreme Court, his conviction became final on September 28, 2009, 90 days after June 30, 2009, the date of the order denying his application for leave to appeal to the New York Court of Appeals. See id. Green accordingly had one year, or until September 28, 2010, to file his federal habeas petition.

By operation of the "prison mailbox rule," Green's petition is deemed to have been filed on the date that he signed it. See Houston v. Lack, 487 U.S. 266, 276 (1988) (stating that the "prison mailbox rule" applies to pro se incarcerated petitioners and provides that a pleading is deemed filed on the day the petitioner hands it over to prison officials for mailing). Here, Green signed his petition on July 2, 2012, so it is deemed to have been filed on that date. Since the limitations period expired on September 28, 2010, the petition is untimely by 643 days (1 year, 9 months, and 4 days).

AEDPA contains a tolling provision which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C.

§ 2244(d)(2); see also, e.g., Smith, 208 F.3d at 16. Here, however, Green did not file any post-conviction or other collateral motions, and therefore he cannot avail himself of any statutory tolling.

**B.  Equitable Tolling**

AEDPA's one-year limitation on filing is not jurisdictional and, under certain circumstances, may be equitably tolled. Holland v. Florida, ---U.S. ----, ----, 130 S. Ct. 2549, 2560, 177 L. Ed.2d 130 (2010); accord, e.g., Acosta v. Artuz, 221 F.3d 117, 119, 122 (2d Cir. 2000) (citation omitted). "[I]n 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period." Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004) (internal quotation omitted). This decision is left to the sound discretion of the district court. Belot v. Burge, 490 F.3d 201, 206-07 (2d Cir. 2007).

The petitioner bears the burden of demonstrating that (1) "extraordinary circumstances prevented him from filing his petition on time," Smith, 208 F.3d at 17; and (2) he "acted with reasonable diligence throughout the period he seeks to toll," id. Equitable tolling also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v.

Stinson, 224 F.3d 129, 134 (2d Cir. 2000). Whether a petitioner's circumstances are "extraordinary" does not focus on "the uniqueness of the petitioner's circumstances, 'but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" Bolarinwa v. Williams, 593 F.3d 226, 231-32 (2d Cir. 2010) (quotation omitted).

Green states that he is entitled to equitable tolling because of his "mental deficiency" and "long history of low intelligence", and because he was "unable to read and write at that time". Dkt #7 at 1. As a result, he states, he was "incompetent with the law" and unable to file within the one-year limitations period. Id. Green has submitted educational records from prison (Dkt #8), showing that his reading was at the 2.6 grade level on August 6, 2007, and that it had improved to the 4.2 grade level by October 5, 2011. Green has not submitted any educational records subsequent to October 2011. In addition, Green has submitted medical records (Dkt #7) indicating that he was housed in a mental health satellite unit of the New York State Department of Correctional Services and Community Supervision ("DOCCS") from March 30, 2009, until at least April 6, 2009. Green has not submitted any mental health records subsequent to April 2009.

The Second Circuit has held that under "appropriate circumstances", a petitioner may "rely on proof of mental illness to justify equitable tolling of the AEDPA's limitation period."

Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010). The "burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the [petitioner]"; in order to carry this burden, he "must offer a 'particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights.'" Id. (quoting Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000)). Therefore, a habeas petitioner must demonstrate that his "particular disability constituted an 'extraordinary circumstance' severely impairing [his] ability to comply with the filing deadline, despite [his] diligent efforts to do so." Id. As explained below, the documentation submitted by Green does not substantiate his claim that he was suffering from a mental illness or mental deficiency that severely impaired his ability to comply with the statutory deadline, despite his diligent efforts to comply with that deadline. See Bolarinwa, 593 F.3d at 232.

On March 26, 2009, when Green saw his mental health care providers in DOCCS, he "[d]enie[d] any severe depression or anxiety" and denied hallucinations. His speech was organized and spontaneous, and his affect was "bright". See Dkt #7 at 4.[1] On March 30, 2009, however, he reported feeling "helpless" and "hopeless" and was "angry over some legal papers". See id. at 6.

---

[1] Page numbers refer to the automatic page-numbering generated by the Court's CM/ECF system.

The "legal papers" are presumably the Appellate Division's order dated March 20, 2009, affirming his conviction. At his March 30th appointment, Green asserted that his brothers had framed him for his father's murder, complained that he had no support from his family or girlfriend, and was upset that he had not seen his child for three years. Id.

On March 31, 2009, Green was admitted to an observation unit due to homicidal (but not suicidal) ideation and feelings of despair. Green was mute at first but "quickly" began to talk to his treatment providers, reporting that "he was innocent of his crime and that his case had been 'affirmed' and that he now had nothing." Green "was superficially cooperative"; his speech was within normal limits; he had good eye contact; he denied sleep disturbances; he exhibited appropriate behavior; and his thoughts were organized and relevant. Although his mood and affect were depressed and anxious, he denied hallucinations and displayed no overt signs of psychosis. He was alert and fully oriented, with intact memory. See DKt #7 at 8.

On April 2, 3, and 4, 2009, Green repeatedly expressed that he was upset and distressed over his unsuccessful appeal, stating that he had been unjustly imprisoned. As his statements to his healthcare providers make clear, it is apparent that his increased feelings of depression were caused by his receipt of notice that his conviction had been affirmed. See, e.g., Dkt #7 at 11.

On April 6, 2009, Green was released from the observation unit. See Dkt #7 at 15. During his discharge interview, he stated that it was his daughter's birthday and that the three-year anniversary of his father's memorial was approaching, but he felt the same and that "nothing was going to change" for him. Id. Green continued to proclaim his innocence and asserted that many people knew he was not guilty. Again, Green reported no sleep disturbances, his behavior was appropriate, and his thoughts were organized and relevant. Although his mood and affect were depressed and anxious, he denied hallucinations and displayed no overt signs of psychosis. Green was alert and fully oriented, and his memory was intact. Green's caregivers indicated in their notes that they believed his primary concerns were not mental-health-related; instead, they opined, he was "protesting against the legal system". Id. In none of the records did Green report suicidal ideation, and he denied having a history of suicidal behavior.

Green "has produced no documentation showing that during the period of time from his conviction until his deadline for filing a timely habeas petition . . . , he was so incapable of rational thought that he could not appreciate his situation, or lacked the wherewithal to ascertain that he must take legal steps." Rios v. Mazzuca, 78 F. App'x 742, 744, 2003 WL 22426961, at *3 (2d Cir. Oct. 22, 2003). Indeed, the medical records that he has produced show just the opposite-that he was keenly aware of his legal

situation, namely, that his conviction had been affirmed on direct appeal. As Respondent notes, becoming depressed as the result of the affirmance of his conviction on direct appeal was actually a quite rational response to that news.

Although medical records show a worsening in his depression after learning of his unsuccessful appeal, they also then show some improvement: Green was discharged from the mental health observation unit about two weeks later. After his discharge from the observation unit in April 2009, documentation of his medical condition ends. The limitations period did not begin until September 2009, and Green has offered no proof of mental incapacity during the period after September 2009, let alone through the approximately three years that elapsed before he filed his habeas petition in July 2012. See Rios, 78 F. App'x at 745; see also Morales v. United States, 373 F. Supp.2d 367, 373 (S.D.N.Y. 2005). Without demonstrating that he was mentally incapacitated during the actual limitations period, Green is unable to establish that his mental condition was causally related to his failure to file his petition on time. See Valverde, 224 F.3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

To the extent that Green relies on his below-average intelligence to support his equitable tolling claim, courts have in general found that and similar conditions insufficient to constitute extraordinary circumstances. See Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("Raspberry's inability correctly to calculate the limitations period is not an extraordinary circumstance warranting equitable tolling."); Heath v. Ault, 334 F. App'x 34, 34 (8th Cir. 2009) (per curiam) (finding petitioner who had a learning disability in reading "did not establish the extraordinary circumstances necessary to equitable toll the limitations period"); Keitt v. City of New York, 09 CIV. 5663 PKC DF, 2010 WL 3466175, at *9 (S.D.N.Y. Aug. 9, 2010) (petitioner's dyslexia and learning disability did not qualify him for equitable tolling); Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007) (finding dyslexia is not a circumstance that justifies the equitable tolling of the statute of limitations) (citing, inter alia, Turner v. Johnson, 177 F.3d 390, 391-92 (5th Cir. 1999) (per curiam) (unfamiliarity with the law due to illiteracy does not toll limitations period)); Marte v. Brown, No. 09 Civ. 1036(RJS)(KNF), 2010 WL 1644271, at *3 (S.D.N.Y. Apr. 20, 2010) ("Courts have rejected lack of access to legal services, illiteracy, lack of English fluency, and ignorance of the law as extraordinary circumstances that 'effectively prohibit [a] petitioner from pursuing habeas relief.'") (quoting Armand v.

Strack, No. 98 Civ. 6650(RDJ), 1999 WL 1667720, at *5 (E.D.N.Y. Feb. 19, 1999) (alteration in original); other citations omitted)); Ayala v. Fischer, No. 04 Civ. 3404(LAK), 2004 WL 2435523, at *1 (S.D.N.Y. Nov. 2, 2004) ("Ignorance of the law and an inability to read or write do not constitute extraordinary circumstances that would justify equitable tolling.") (citations omitted). Here, Green has not submitted evidence that he was effectively prohibited him from seeking legal redress due to his low I.Q. or difficulties in reading and writing.

Finally, Green's "statement that he is generally unknowledgeable about the governing law or the AEDPA in particular is insufficient to warrant equitable tolling. Such a limitation, under which numerous pro se inmate petitioners suffer, does not amount to 'extraordinary circumstances[.]'" Cannon v. Kuhlmann, No. 99CIV.10101(DLC), 2000 WL 1277331, at *2 (S.D.N.Y. Sept. 7, 2000) (citing Martinez v. Kuhlmann, No. 99 Civ. 1094(MBM), 2000 WL 622626, at *3 (S.D.N.Y. May 15, 2000); Zorilla v. Artuz, No. 99 Civ. 9249 (NRB), 2000 WL 328881 (S.D.N.Y. Mar. 29, 2000)).

In sum, Green has not showed that he acted with reasonable diligence throughout the period he wishes to have tolled. The records submitted by Green do not establish that his mental condition was sufficiently "rare" or "exceptional" to constitute "extraordinary circumstances". Moreover, he has not established that he was acting with reasonable diligence throughout the

limitations period. Indeed, there are three years (April 2009, to July 2012) for which Green has not submitted any medical or educational records, and he has not otherwise explained how he was acting with reasonable diligence throughout this time or provided a particularized explanation as to how his mental deficiencies or depression prevented him from pursuing his legal rights. Accordingly, Green is not entitled to equitable tolling.

## IV. Conclusion

For the foregoing reasons, the petition (Dkt #1) is dismissed as untimely. No certificate of appealability shall issue because Green has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether th[is] . . . [C]ourt was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Bethea v. Girdich, 293 F.3d 577, 577 (2d Cir. 2002) (Slack v. McDaniel standard applies to request by habeas petitioner, whose petition was dismissed as untimely under AEDPA, for a certificate of appealability).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated: January 30, 2014
Rochester, New York